OPINION
{¶ 1} Defendant-appellant, Jason W. Williams, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of kidnapping and felonious assault and sentencing him to three years in prison. For the following reasons, we affirm the judgment of that court.
 {¶ 2} On July 19, 2002, defendant was indicted on two counts of felonious assault, in violation of R.C. 2903.11, felonies of the second degree; one count of kidnapping, in violation of R.C. 2905.01, a felony of the first degree; and one count of aggravated burglary, in violation of R.C. 2911.11, a felony of the first degree. Beginning June 27, 2003, defendant was tried before a jury in the Franklin County Court of Common Pleas.
 {¶ 3} The jury found defendant not guilty of criminal trespass and felonious assault as to Steven Neal. The jury found defendant guilty of one count of kidnapping and one count of felonious assault as to Christina Franchi.
 {¶ 4} On August 29, 2003, the trial court sentenced defendant to three years in prison as to the kidnapping count and three years in prison as to the felonious assault count. The trial court, upon its own motion, reduced the kidnapping count to a felony of the second degree.[1] The court determined that the two crimes merged for purposes of sentencing.
 {¶ 5} Defendant appeals from this judgment and has asserted the following sole assignment of error:
The trial court erred when it entered judgment against Appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 6} In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 7} In the case at bar, defendant was convicted of kidnapping and felonious assault. Regarding defendant's felonious assault conviction, R.C. 2903.11 provides as follows:
(A) No person shall knowingly * * *
* * *
(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.
* * *
(D) Whoever violates this section is guilty of felonious assault, a felony of the second degree. * * *
 {¶ 8} We note that in State v. Green (1991), 58 Ohio St.3d 239, syllabus, the Supreme Court of Ohio held: "The act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)."
 {¶ 9} As to defendant's kidnapping conviction, R.C. 2905.01 provides, in pertinent part, as follows:
(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
(2) To facilitate the commission of any felony or flight thereafter;
(3) To terrorize, or to inflict serious physical harm on the victim or another;
* * *
(C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree.
 {¶ 10} Many of the facts of this case are disputed. However, it is undisputed that this case arises from events that occurred on July 9, 2002, at 1915 Eddystone Avenue, Franklin County, Ohio. Christina Franchi and defendant had lived together at 1915 Eddystone for several months prior to July 9, 2002, as boyfriend and girlfriend. At trial, defendant described their relationship as "a little rocky." (Tr. Vol. II, at 189.)
 {¶ 11} In the afternoon of July 9, 2002, defendant arrived at Ms. Franchi's home, which was located at 1915 Eddystone Avenue, to pick up his property, as Ms. Franchi and defendant had broken off their relationship. At the time defendant arrived, Ms. Franchi's new boyfriend, Steven Neal, was in an upstairs bedroom in the home. Ms. Franchi and her daughter were also in the home at the time. Defendant entered the property unannounced through the front door, which had been locked.[2]
 {¶ 12} Defendant proceeded up the stairs to the second floor of the home. Ms. Franchi testified that she did not hear defendant enter the home. (See Tr. Vol. II, at 100.) According to Ms. Franchi, she and her daughter were watching movies and Mr. Neal was asleep when defendant entered the home. (See Tr. Vol. II, at 61.) Defendant entered the bedroom, and upon seeing Mr. Neal, defendant said "Who the F is this in my bed, and why is he here?" (Tr. Vol. II, at 207.) Ms. Franchi testified regarding what occurred when she first saw defendant that day, as follows:
He opened up the bedroom door. I was shocked seeing him. I went straight to the door, pushed him out of the bedroom door and told him we are not doing this. You know, what are you doing? I closed the door behind me because I had my daughter in the bedroom. He grabbed me by my throat [and] slammed me against the wall and then started screaming and yelling.
(Tr. Vol. II, at 61.)
 {¶ 13} According to the testimony of Ms. Franchi and Mr. Neal, Mr. Neal, followed by defendant, exited the house. Their testimony indicated that Mr. Neal and defendant entered their respective automobiles. Mr. Neal testified that defendant's automobile was parked behind his automobile. According to Mr. Neal, he and defendant were backing out of the driveway when defendant pulled his automobile onto the front lawn of the property, exited his automobile, and ran toward the house. Mr. Neal testified that when defendant "took off up in the front lawn," he "knew something was wrong," and he called 911. (Tr. Vol. II, at 13.)
 {¶ 14} Although defendant provided his own version of the events as they transpired that day, there was evidence presented at trial that upon his re-entry into the house, defendant placed a knife at the throat of his ex-girlfriend, indicating his intention to use the deadly weapon. Ms. Franchi testified that when defendant re-entered the home, the following occurred: "He came in and smacked me across the face, threw me on the couch, and grabbed my hair, drug me into the kitchen and got a knife out of the microwave cabinet drawer and put it to my throat." (Tr. Vol. II, at 65.) Ms. Franchi further detailed what occurred in the kitchen, as follows:
He put the knife to my throat, had his hand around my throat, and with the other hand had the knife to my throat. And he takes the knife away from my throat and acts like he was going to stab me in my leg. Then he put the knife back up and he kept saying, "Do you think I won't fucking cut you? Don't you think I won't fucking cut you?" And then the next thing I know, I look over and Steven had come into the kitchen with a baseball bat and told Jason to get the fuck off me.
(Tr. Vol. II, at 66.)
 {¶ 15} Mr. Neal's testimony corroborated Ms. Franchi's testimony that defendant placed a knife at her throat. According to Mr. Neal, when he re-entered the home carrying a baseball bat, he saw defendant "holding Ms. Franchi up against the wall with a knife. He had a knife to her throat." (Tr. Vol. II, at 17.) Defendant testified that he did not slap Ms. Franchi, push her to the ground, drag her from room to room, choke her, or put a knife to her throat.
 {¶ 16} When Mr. Neal re-entered the house with the baseball bat, a mêlée ensued between defendant and Mr. Neal. Mr. Neal was stabbed in the back with a knife at some point in the fight. Defendant did not dispute at trial that he stabbed Mr. Neal, but argued that he grabbed the knife because he feared for his safety and that he acted in self-defense.[3]
 {¶ 17} In support of his argument that the evidence was insufficient to support the felonious assault and kidnapping convictions, defendant points to photographs of Ms. Franchi taken by the police hours after the incident. According to defendant, these photographs do not support her testimony and reveal a demeanor that is not consistent with someone who had been threatened with a knife. We observe that Ms. Franchi is smiling in one of the photographs. However, the fact that Ms. Franchi is smiling in one of the photographs, which was taken hours after the attack, certainly does not render the testimony at trial regarding defendant's actions as wholly unreliable. Additionally, we observe that at least one photograph of Ms. Franchi taken after the incident reveals red marks or bruises on her neck. Defendant argues that these marks are "bite marks on her neck from Mr. Neal and that is all." (Defendant's brief, at 5.) Notwithstanding defendant's argument regarding these marks, it would be reasonable to conclude that the location of these marks or bruises supported the testimony that defendant held Ms. Franchi by her neck with one of his hands.
 {¶ 18} We find defendant's argument that the evidence was insufficient to support the convictions to be unpersuasive. Ample evidence in the record supports defendant's conviction for kidnapping and felonious assault. Therefore, in view of the evidence presented at trial, we find that defendant's convictions for kidnapping and felonious assault were supported by legally sufficient evidence.
 {¶ 19} Regarding the weight of evidence, the Supreme Court of Ohio, in Thompkins, supra, at 387, stated as follows:
* * * Weight of the evidence concerns "the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greateramount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief."
(Emphasis sic.) Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 20} Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Although defendant does not state it as such, he appears to argue that the judgment was against the manifest weight of the evidence. When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 21} It was within the province of the jury to resolve any conflicts or inconsistencies in the testimony at trial in this case. A jury, as finder of fact, is free to believe all, part, or none of each witness's testimony. State v. Colvin, Franklin App. No. 04AP-421, 2005-Ohio-1448, at ¶ 34. The evidentiary inconsistencies in this case did not render defendant's convictions as being against the manifest weight of the evidence.
 {¶ 22} Upon our review of the record, we do not find that the jury "lost its way" when it found defendant guilty of kidnapping and felonious assault. Moreover, this is not an "exceptional case in which the evidence weighs heavily against the conviction." Martin, at 175.
 {¶ 23} Based on the foregoing, defendant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt and Sadler, JJ., concur.
[1] R.C. 2905.01(C) provides that "[i]f the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree." Otherwise, kidnapping is a felony of the first degree. Id.
[2] Defendant used a key that he had in his possession. Whether 1915 Eddystone was his residence on July 9, 2002, was disputed at trial. The jury found defendant not guilty of criminal trespass.
[3] We note that the jury found defendant not guilty of felonious assault against Mr. Neal.